**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

**<u>AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT</u>**

I, Rafael Baez, being duly sworn, do hereby depose and state the following:

  1.  I am a Special Agent of the United States Department of Homeland Security, Homeland Security Investigations (HSI) and have been so employed since August 2009, currently assigned to the HSI Mayaguez Office in Puerto Rico. I graduated from the Criminal Investigator Training Program and the Immigration and Customs Enforcement Special Agent Training at the Federal Law Enforcement Training Center in Glynco, Georgia. I have received training and have participated in criminal investigations into the unlawful importation, possession with intent to distribute, distribution of controlled substances, the laundering of monetary instruments, monetary transactions in property derived from specified unlawful activities and the associated conspiracies to commit such crimes. I have also received training and have participated in criminal investigations, including investigations relating to financial investigations, among others.

  2.  As a Special Agent, my duties and responsibilities include conducting investigations of alleged manufacturing, distributing or possession of controlled substances (21 U.S.C. 841 (a) (1), importation of controlled substances 21 U.S.C. 952 (a), smuggling of goods into the United States (18 U.S.C. 545) and maritime drug smuggling (46 U.S.C. 70503) among others. My duties also include the enforcement of Immigration and Nationality Laws and regulations in order to identify, locate, apprehend, and prosecute those individuals involved in the organized smuggling of aliens across the borders into the United States.

  3.  Because this Affidavit is submitted for a limited purpose, I have not included details of every aspect of this investigation. I am thoroughly familiar with the information

contained in this Affidavit, either through personal investigation or through discussions with other law enforcement officers who have interviewed individuals or personally have obtained information, which they in turn have reported to me.

## PROBABLE CAUSE

4. On January 13, 2025, at approximately 0330hrs, U.S. Coast Guard Cutter (CGC) Joseph Tezanos was diverted to investigate a target of interest (TOI) in position 17-26.06N 061-37.27W. At that time, a U.S. Customs and Border Protection (CBP) Caribbean Air and Marine (CAMB) aircraft had reported the TOI as a yola-style vessel, approximately twenty-five (25) feet in length with two (2) outboard engines, three (3) persons on board (POB), and packages visible on deck.

5. At 0453hrs, while in route to the target location, CGC Joseph Tezanos launched a small boat identified as CG26303 to intercept the TOI. The CG26303 intercepted the TOI at 0546hrs in position 17-35.14N 067-21.3W, approximately 22.6 nautical miles from land (west coast of Puerto Rico), within the U.S. contiguous zone.

6. Upon intercept, the CG26303 crew observed approximately forty (40) individuals aboard a 25-foot blue yola with two outboard engines, suspected of conducting a migrant venture. The vessel appeared to be a handmade wooden boat with no markings, name, flag or registration numbers. All individuals aboard were compliant, and the vessel stopped.

7. The on-board CG26303 translator requested the vessel's master to identify themselves and make a claim of nationality for the vessel. No individual came forward as the master, and no claim of nationality was made. A voluntary disembarkation process began at 0542hrs, during which CG26303 made five trips to transfer a total of twenty-four (24) individuals to CGC Joseph Tezanos. The fifth trip was completed at 0728hrs.

8. Shortly thereafter, the vessel restarted its engines and began heading northeast towards Puerto Rico, at approximately 10 knots, with seventeen (17) individuals remaining on board. At 0730hrs, CG26303 broke away from the cutter and re-intercepted the vessel at 0745hrs in position 17-35.6N 067-19.8W, approximately 21.65 nautical miles from land, still within the U.S. contiguous zone. Three (3) operators were clearly visible, with one driving each of the two tiller-driven outboard engines and one fueling the vessel. CG26303 boarding crew started giving verbal commands in Spanish & English, using the loud hailer, for them to stop their vessel and they failed to heave to and continued their venture.

9. At 0743hrs, a new approval for steps II-IV was requested because the vessel was non-compliant. At 0831hrs, a local law enforcement vessel from the Puerto Rico Police Bureau (PRPB), "Fuerzas Unidas de Rápida Acción" (FURA) joined the pursuit. At 0847hrs, approval was granted for the use of step II LA-51 warning shots and step III pepper-ball projectile dispersant process (PPDP). At 0848hrs, CG26303 discharged two LA-51 warning shots off the bow of the yola in position 17-42.7N 067-17.8W, approximately 14.35 nautical miles from land, but these had no effect, and the non-compliant vessel continued navigating towards Puerto Rico.

10. At 0849hrs, CG26303 crew discharged three volleys of PPDP (5-7 rounds each) at the operators and the helm area. The operators threw themselves to the deck of the vessel, which entered a low-speed spin. At that time, an individual not involved in operating the vessel straightened the engines, allowing CG26303 to come safely alongside and pull the fuel hoses from the gas tanks.

11. The three operators of the non-compliant vessel were re-identified by the boarding team after attempting to change their clothing and appearance. They were transferred to CGC Joseph Tezanos, where they were processed by the crew. FURA vessel remained alongside the vessel until all remaining individuals were transferred to CGC Joseph Tezanos. A total of forty-one (41) individuals, including the three (3) operators, were transferred.

12. Upon getting transferred to the CGC Joseph Tezanos, all subjects claimed to be undocumented migrants from the Dominican Republic and Haiti. The three operators of the non-compliant vessel were identified as **William KERY**, **Efrain POLANCO-De La Cruz** and **Nelfi CASTRO-Alberto**.

13. On January 15, 2025, at approximately 1630hrs, **William KERY, Efrain POLANCO-De La Cruz and Nelfi CASTRO-Alberto** were transported by the U.S. Coast Guard to the Mayaguez Public Pier, Mayaguez, Puerto Rico, where HSI Agents assumed their custody.

## CONCLUSION

14. Based upon my training, experience, and participation in other investigations, and based on the facts revealed in this investigation, I submit that probable cause exists to demonstrate the commission of a violation of federal law by the above-mentioned subject, to wit: a violation of Title 18 *United States Code*, Section 2237: Failure to Heave & Title 8, *United States Code,* Section 1324 (a)(1): Alien Smuggling.

*Rafael Báez*
_____
Rafael Baez
HSI Special Agent

Subscribed and sworn before me pursuant to FRCP 4.1 at  11:35AM  by telephone, this  16th  day of January 2025.

_____
Honorable Marshal D. Morgan
United States Magistrate Judge
District of Puerto Rico

4